IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                                                                                          No. 24-cr-551 KWR

MARIO RUDOLFO,

        Defendant.

**MEMORANDUM OPINION AND ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS INDICMENT**

THIS MATTER comes before the Court upon Defendant Mario Rudolfo's motions to dismiss the indictment. Docs. 30, 36, 37. Having reviewed the parties' briefs and applicable law, the Court finds that Defendant's motions are not well taken, and therefore, are **DENIED**.

**BACKGROUND**

On April 24, 2024, the United States returned an indictment (the "Indictment") charging Defendant Mario Rudolfo with possessing a firearm and ammunition while knowing that he had been convicted of crimes punishable by imprisonment for a term exceeding one year in violation of 18 U.S.C. § 922(g)(1). Doc. 2. The predicate felonies (crimes punishable by imprisonment for a term exceeding one year) referenced in the Indictment include Defendant's past state court convictions for attempted first-degree murder and tampering with evidence. Doc. 2.

On March 8, 2005, a New Mexico District Court entered a judgment and sentence after Defendant was convicted of the felony offenses of murder in the first degree, attempt to commit murder in the first degree, shooting at a motor vehicle, and tampering with evidence. Doc. 32 (Ex.

1

A). Defendant was sentenced for a period of incarceration of life imprisonment plus nineteen and a half years. Doc. 32 (Ex. A).

In 2008, the New Mexico Supreme Court reversed Defendant's conviction of shooting at a motor vehicle while affirming the remaining convictions. Doc. 32 (Ex. B); *State v. Rudolfo*, 187 P.3d 170, 178 (N.M. 2008). On July 11, 2008, the New Mexico District Court entered a judgment and sentence for the remaining convictions of murder in the first degree, attempt to commit murder in the first degree, and tampering with evidence. Doc. 32 (Ex. B).

In 2023, the New Mexico Supreme Court vacated Defendant's first-degree murder conviction and remanded the case for a new trial on the first-degree murder charge. *Rudolfo v. Steward*, 533 P.3d 728, 735 (N.M. 2023). In a footnote, the Court specified that the opinion does not disturb the conviction for attempted murder. *Id.* at 735 n.1. Thereafter, the district attorney entered a nolle prosequi providing notice that it was dismissing the case without prejudice. Doc. 32 (Ex. C).

Defendant now moves to dismiss the Indictment in three separate motions. Docs. 30, 36, 37.

## DISCUSSION

**I.   Legal Standard**

"A party may raise by pretrial motion any defense, objection, or request which is capable of determination without a trial on the merits." Fed. R. Crim. P. 12(b)(1); *see also* Fed. Crim. P. 12(b)(1) advisory committee note to 2014 amendments ("The more modern phrase 'trial on the merits' is substituted for the more archaic phrase 'trial of the general issue.' No change in meaning is intended."). "Rule 12 permits pretrial resolution of a motion to dismiss the indictment only when

'trial of the facts surrounding the commission of the alleged offense would be of no assistance in determining the validity of the defense.'" *United States v. Pope*, 613 F.3d 1255, 1259 (10th Cir. 2010) (citing *United States v. Covington*, 395 U.S. 57, 60 (1969)). "If contested facts surrounding the commission of the offense would be of *any* assistance in determining the validity of the motion, Rule 12 doesn't authorize its disposition before trial." *Id.* (emphasis in original).

During the pretrial stage, "courts may entertain motions that require it to answer only pure questions of law," such as challenges to the constitutionality of a statute. *See Pope*, 613 F.3d at 1260. Courts can also entertain "motions to dismiss that require resort to facts outside the indictment" and go towards a defendant's guilt or innocence where "[1] operative facts are undisputed and [2] the government fails to object to the district court's consideration of those undisputed facts, and [3] the district court can determine from them that, as a matter of law, the government is incapable of proving its case beyond a reasonable doubt." *Id.* (citing *United States v. Hall*, 20 F.3d 1084, 1088 (10th Cir. 1994)) (internal quotations omitted). Still, where a motion to dismiss implicates an issue going to a defendant's guilt or innocence, dismissal remains a "rare exception." *See id.* (citations and internal quotations omitted).

## II.  Analysis

Defendant makes six arguments as to why the Indictment should be dismissed. Defendant, however, does not cite a Federal Rule of Criminal Procedure and fails to specify nature of his attack on the indictment. Accordingly, the Court broadly categorizes the arguments as either an attack on the sufficiency of the indictment, *see infra* section II.A, or the constitutionality of § 922(g)(1), *see infra* section II.B.

For the reasons discussed below, the Court concludes that Defendant's motions to dismiss must be denied.

A. <u>Defendant's arguments attacking the sufficiency of the Indictment are unavailing</u>.

Defendant's arguments attacking the sufficiency of the Indictment are unavailing. "An indictment is sufficient if it sets forth the elements of the offense charged, puts the defendant on fair notice of the charges against which he must defend, and enables the defendant to assert a double jeopardy defense." *United States v. Todd*, 446 F.3d 1062, 1067 (10th Cir. 2006) (citing *United States v. Dashney*, 117 F.3d 1197, 1205 (10th Cir. 1997)). "Generally, the strength or weakness of the government's case, or the sufficiency of the government's evidence to support a charge, may not be challenged by a pretrial motion." *Hall*, 20 F.3d at 1087 (citing *United States v. King*, 581 F.2d 800, 802 (10th Cir. 1978)). Rather, "[o]n a motion to dismiss an indictment, the question is . . . solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense." *Todd*, 446 F.3d at 1067 (citing *United States v. Sampson*, 371 U.S. 75, 78–79 (1962)).

To prove a violation of 18 U.S.C. § 922(g)(1), the government must show: "(1) [t]he defendant was convicted of a felony; (2) [t]hereafter the defendant knowingly possessed a firearm; and (3) [t]he defendant's possession of the firearm was in or affecting commerce." *United States v. Shunk*, 881 F.2d 917, 921 (10th Cir. 1989). The Indictment sets forth each of these elements. Doc. 2.

Defendant principally argues that the Indictment is insufficient because there are no predicate felonies. Docs. 30, 36. He first argues that, by entering a nolle prosequi, the district attorney vacated the referenced predicate felony convictions. Doc. 30 at 4. Defendant next argues that his felony conviction for tampering with evidence must be reduced to a misdemeanor, and therefore, can no longer serve as a predicate felony. Doc. 30 at 5–8. Defendant finally argues that the referenced predicate felony convictions should be treated as juvenile delinquency, rather than

adult, adjudications. Doc. 36 at 3. Defendant also argues that the government cannot establish the "in or affecting commerce" element because it cannot prove he personally crossed state lines while possessing a weapon as a felon. Doc. 37 at 8–10.

For the reasons discussed below, the Court finds that the Indictment is sufficient.

      *i.      Entering a nolle prosequi did not vacate Defendant's convictions for attempted first-degree murder or evidence tampering.*

Defendant first argues that, by entering a nolle prosequi, Doc. 32 (Ex. C), the district attorney dismissed all charges *and vacated all convictions* associated with the first-degree murder case. Doc. 30 at 4. The Court finds that the nolle prosequi did not affect either the attempted first-degree murder or evidence tampering conviction.

First, entering a nolle prosequi dismisses pending charges, not settled convictions. *See State v. Ware*, 850 P.2d 1042, 1044 (N.M. 1993) ("[A] nolle prosequi is a dismissal of *charges* filed by the prosecutor, usually without prejudice." (emphasis added)); *nolle prosequi*, Black's Law Dictionary (12th ed. 2024) ("A legal notice that a lawsuit or prosecution has been abandoned."). Second, this argument depends on prosecutors having the power to vacate settled convictions or, in effect, to pardon. *See pardon*, Black's Law Dictionary (12th ed. 2024) ("The act or an instance of officially nullifying punishment or other legal consequences of a crime."). The New Mexico Constitution, however, grants the pardon power only to the State's chief executive. N.M. Const. art. V, § 6. Defendant does not point to any authority vesting lower-level executives with this power.

      *ii.      Reducing Defendant's conviction for evidence tampering from a felony to a misdemeanor would not affect the sufficiency of the Indictment.*

Defendant next argues that his felony conviction for evidence tampering, Doc. 32 (Ex. B), must be reduced to a misdemeanor, and as a result, is no longer a predicate felony offense under

18 U.S.C. § 922(g)(1). Doc. 30 at 5–8. Even if the Court were to treat his tampering conviction as a misdemeanor, the Indictment includes an additional predicate felony conviction for attempted first-degree murder. Doc. 2. Accordingly, the allegations in the Indictment are sufficient to establish a violation of § 922(g)(1) notwithstanding evidence tampering being classified as a misdemeanor. *See Todd*, 446 F.3d at 1067 ("[T]he question is . . . solely whether the allegations in the indictment, if true, are sufficient to establish a violation of the charged offense."). It is improper to explore this argument any further at this stage. *See id.* ("Challenging an indictment is not a means of testing the strength or weakness of the government's case . . . ." (citing *Hall*, 20 F.3d at 1087)).

    iii. *The Court cannot treat Defendant's convictions as juvenile adjudications*.

Defendant argues that when the New Mexico Supreme Court vacated Defendant's first-degree murder charge and the State entered a nolle prosequi, his convictions for attempted first-degree murder and evidence tampering became juvenile delinquency adjudications, and therefore no longer qualify as predicate offenses to § 922(g)(1). Doc. 36 at 3. Namely, Defendant argues that N.M. Stat. Ann. § 32A-2-20 (West 2023), which states that a "child . . . charged with first degree murder, but found to have committed a delinquent act that is neither first degree murder nor a youthful offender offense, . . . shall be adjudicated as a delinquent . . . ," transforms his adult convictions into a juvenile convictions after his first-degree murder conviction and charge was vacated and dismissed. Doc. 36 at 3.

 Notwithstanding the merits of this claim, Defendant fails to establish (much less cite to any authority in support of) the condition precedent: that this Court has the authority to modify or recharacterize a settled state court felony conviction as a juvenile offense. The Court concludes that it does not.

6

The Full Faith and Credit Act provides that "judicial proceedings of any court of any such State . . . shall have the same full faith and credit in every court within the United States . . . ." 28 U.S.C. § 1738. This requires "a federal court [to] give the same preclusive effect to a state-court judgment as another court of that State would give." *Parsons Steel, Inc. v. First Ala. Bank*, 474 U.S. 518, 523 (1986). "A final judgment in one State, if rendered by a court with adjudicatory authority over the subject matter and persons governed by the judgment, qualifies for recognition throughout the land." *Baker by Thomas v. General Motors Corp.*, 522 U.S. 222, 233 (1998). "[I]n other words, the judgment of the rendering State gains nationwide force." *Id.*

Once the state district court adjudicated Defendant to have been convicted attempted first-degree murder (a second-degree felony) and evidence tampering (a fourth-degree felony) and imposed a sentence, Doc. 32 (Ex. B), the judgment became final. *See State v. Garcia*, 659 P.2d 918, 923 (N.M. 1983) ("A final judgment in a criminal case is one which either (1) adjudicates the defendant to have been convicted of a criminal offense and imposes [a] sentence or (2) dismisses all of the charges against the defendant."). At no point has a New Mexico court disturbed or questioned these convictions. *See Rudolfo*, 533 P.3d at 735 n.1. It follows that this Court must give full force to the valid and final state court criminal judgment classifying Defendant's crimes as felonies.

      iv.    *The Tenth Circuit has expressly foreclosed Defendant's "in or affecting commerce" argument.*

Defendant argues that the interstate commerce element of § 922(g)(1) cannot be met in this case because the government lacks evidence that Defendant crossed state lines while possessing the firearm or ammunition referenced in the Indictment. Doc. 37 at 8–10.[1] The Tenth Circuit has

---

[1] The Court can at least entertain this argument because the government does not dispute that it lacks such evidence and does not object to its consideration, and the Court can determine as a

7

made clear, however, that no such showing is needed. *See United States v. Urbano*, 563 F.3d 1150, 1154 (10th Cir. 2009). "[I]f a firearm has traveled across state lines, the minimal nexus with interstate commerce is met and the statute can be constitutionally applied." *Id.* (citing *United States v. Farnsworth*, 92 F.3d 1001, 1006 (10th Cir. 1996)). "[N]o further showing of the actual effect of the defendant's actions on interstate commerce [is required]." *Id.* Therefore, Defendant's contention can be rejected as a matter of law.

    B. 18 U.S.C. § 922(g)(1) is constitutional.

Defendant argues that 18 U.S.C. § 922(g)(1) is unconstitutional because it unduly inhibits his right to bear arms under the Second Amendment, U.S. Const. amend. II, and exceeds Congress's lawmaking power under the Commerce Clause, U.S Const. art. I, § 8, cl. 3. Doc. 37. For the reasons discussed below, the Court finds that § 922(g)(1) is constitutional.

    i. *§ 922(g)(1) does not violate the Second Amendment.*

Defendant first argues that § 922(g)(1), which makes it unlawful for any person convicted in any court of a crime punishable by imprisonment for a term exceeding one year to possess any firearm or ammunition, is facially unconstitutional.[2] A facial challenge "is the 'most difficult challenge to mount successfully,' because it requires a defendant to 'establish that no set of circumstances exists under which the Act would be valid.'" *United States v. Rahimi*, 144 S. Ct. 1889, 1898 (2024) (citing *United States v. Salerno*, 481 U.S. 739, 745 (1987)). "That means to prevail, the Government need only demonstrate that [§ 922(g)(1)] is constitutional in some of its applications." *Id.*

---

matter of law whether such evidence is necessary to prove an element of the charged offense. *See Pope*, 613 F.3d at 1260.
[2] Defendant acknowledges *Vincent v. Garland*, 80 F.4th 1197 (10th Cir. 2023), *cert. granted, judgment vacated*, 144 S. Ct. 2708 (2024), which upheld § 922(g)(1) under the *Bruen* framework. Because the case was vacated and remanded, however, the Court cannot rely on its holding.

The Second Amendment provides that "[a] well regulated Militia, being necessary to the security of a free State, the right of the people to keep and bear Arms, shall not be infringed." U.S. Const. amend. II. To determine whether a statute violates the Second Amendment, the Court must ask whether "the Second Amendment's plain text covers [the] individual's conduct." *N.Y. State Rifle & Pistol Ass'n, Inc. v. Bruen*, 597 U.S. 1, 24 (2022). If it does, "[t]he government must then justify its regulation by demonstrating that it is consistent with the Nation's historical tradition of firearm regulation." *Id.* This means that "[t]he law must comport with the principles underlying the Second Amendment, but it need not be a 'dead ringer' or a 'historical twin.'" *Rahimi*, 144 S. Ct. at 1898 (citation omitted).

Under this framework, § 922(g)(1) is constitutional. The Supreme Court has repeatedly referred to the prohibition against felons possessing firearms as being a paradigm example of a historically lawful regulation and is presumptively lawful. *See District of Columbia v. Heller*, 554 U.S. 570, 626, 627 n.6 (2008) (explaining that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," and that prohibiting felons from possessing firearms is a "presumptively lawful regulatory measure[]."); *McDonald v. Chicago*, 561 U.S. 742, 786 (2010); *Bruen*, 597 U.S. at 80 (Kavanaugh, J., joined by Roberts, C.J., concurring) (reiterating the statement in *Heller* about the propriety of prohibiting felons from possessing firearms); *Rahimi*, 144 S. Ct. at 1902.

The conclusions drawn by the Supreme Court while analyzing other firearm regulations also supports § 922(g)(1)'s constitutionality. In *Bruen*, the Court explained that fundamental to the Second Amendment is ensuring that "law-abiding" and "responsible" citizens are free to possess firearms for self-defense. 597 U.S. at 60. Felons are clearly not among the "law-abiding" or "responsible" citizens referenced. Furthermore, the Court reasoned that regulations requiring

9

criminal background checks before applicants can receive gun permits remain valid because these regulations are "designed to ensure only that those bearing arms in the jurisdiction are, in fact, 'law-abiding, responsible citizens.'" *See Bruen*, 597 U.S. at 38 n.9 (citing *Heller*, 554 U.S. at 635). This implies that at least some felons are not entitled to firearms and that prohibiting such people from possessing firearms is permissible.

In *Rahimi*, the Court held that a person can be disarmed if a court finds that they pose a "credible threat to the physical safety of another." *See* 144 S. Ct. at 1903. In doing so, the Court referenced pre-founding English gun laws authorizing the seizure of arms from those adjudged to be danger to the public, including subjects who "physically threatened others." *See id.* at 1899. At least some (namely violent) felons pose a threat to the physical safety of others in the community. It follows, therefore, that Defendant's facial challenge must fail.

Defendant also argues that § 922(g)(1) is unconstitutional as applied to the facts of his case. Doc. 37 at 5–6. While non-violent felony offenders may present a closer question, Defendant was convicted of attempted first-degree murder after firing an assault rifle at a car full of people. *See State v. Rudolfo*, 187 P.3d 170, 172 (N.M. 2008). Under these facts and based on the discussion above, it is clear to the Court that prohibiting Defendant from carrying a firearm does not offend the Second Amendment.

   ii. *§ 922(g)(1) does not exceed Congress's lawmaking power under the Commerce Clause.*

The Tenth Circuit has expressly foreclosed the argument that 18 U.S.C. § 922(g)(1) exceeds Congress's lawmaking authority under the Commerce Clause. *See United States v. Patton*, 451 F.3d 615, 634–36 (10th Cir. 2006); *United States v. Farnsworth*, 92 F.3d 1001, 1006 (10th Cir. 1996); *United States v. Bolton*, 68 F.3d 396, 400 (10th Cir. 1995). Defendant does not point

to any authority undermining this holding. As a result, the Court finds that § 922(g)(1) does not exceed Congress's lawmaking power.

## CONCLUSION

Accordingly, Defendant's motions to dismiss the Indictment, Docs. 30, 36, 37, are **DENIED**.

**SO ORDERED**.

_____/S/_____
KEA W. RIGGS
UNITED STATES DISTRICT JUDGE